IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| HOPE ELIZABETH PORRAZ, ) | | |
| formerly known as HOPE JUDD ) | | |
| LANDRUM, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | Civil Action No. | |
| ) | | |
| KIA MOTORS MANUFACTURING ) | 4:21-cv-156 | |
| GEORGIA, INC., ) | | |
| ) | | |
| Defendant. ) | Jury Trial Requested | |

## COMPLAINT

Comes Now Plaintiff Hope Elizabeth Porraz, formerly known as Hope Judd Landrum ("Plaintiff"), by and through her counsel of record, Barbara H. Agricola of Agricola Law, LLC, and files this Complaint against Defendant Kia Motors Manufacturing Georgia, Inc. ("KMMG"), and in support of the same, states as follows:

## PARTIES

1. Defendant KMMG is a corporation organized and existing under the laws of the State of Delaware. As such, Defendant is a "person" as defined by 42 U.S.C. § 2000e(a). Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

2. Plaintiff Hope Elizabeth Porraz, formerly known as Hope Judd Landrum, is an adult resident of the State of Alabama. Hope Elizabeth Porraz is a Caucasian female. At all times material hereto, Plaintiff was an "employee" of Defendant as defined by 42 U.S.C. § 2000e(f).

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Plaintiff's claims and the litigation thereof pursuant to 28 U.S.C. §§ 1331, and 42 U.S.C. § 2000e-5(f)(3). Plaintiff has exhausted her administrative remedies by filing a charge of discrimination on April 21, 2021, with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received Notice of her Right to Sue from EEOC on June 15, 2021.

4. Defendant has its primary office in the Middle District of Georgia. The unlawful employment practices complained of herein occurred within the Middle District of Georgia, making venue proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391.

## STATEMENT OF FACTS

5. Plaintiff is a Caucasian female who was first employed by KMMG on August 12, 2013, as a "Procurement (Parts Development) Specialist." According to the job description in effect at the time Plaintiff was hired, this position required a Bachelor's Degree in Business, Engineering or related discipline and two to five years of "progressively responsible supply chain experience, preferably in the automotive industry, or equivalent combination of education and experience." At the time Plaintiff was hired, she had a Bachelor of Science Degree in Business Administration (August 2013) with a major in Supply Chain Management from Auburn University and eight years of experience in the supply chain field, specifically logistics. Plaintiff's hiring by KMMG indicates that KMMG

accepted Plaintiff's prior work experience as a qualification for the job she was hired to perform.

6. On November 13, 2014, KMMG updated Plaintiff's job description. The major change to Plaintiff's job description was a reduction in the required prior work experience from two to five years of relevant experience to zero to two years of relevant experience. KMMG required Plaintiff to sign the new job description on December 16, 2014.

7. On or about December 16, 2014, KMMG notified Plaintiff that it had completed a specialist career banding review. Based on the established specialist career banding level criteria, Plaintiff was placed in career band level 2. In determining which career band level was most appropriate for Plaintiff, KMMG determined that Plaintiff had only 1.17 years of Relevant Experience, Relevant Education Credit of 2 equaling 3.17, her Last Two Salaried Performance Appraisal Ratings for 2013 and 2012 were not applicable, but her Department Average Performance Appraisal Ratings for the Last Two Years were 3.64 for 2013, and 3.47 for 2012. In KMMG's career banding review, Plaintiff was given no credit for her prior years of experience in supply chain management before being hired by KMMG.

8. On December 16, 2014, when Plaintiff questioned her Head of Department ("HOD"), Kevin Kinsey, why she was not placed in career band level 3 based on her prior experience which was a qualification for her hiring, Kinsey told Plaintiff that she would be banded up to the correct band level in April, 2015. When Plaintiff met with Heather

Andrews in Human Resources to ask the same question, Andrews informed Plaintiff that her band level was at the discretion of her HOD.

9. For 2014, Plaintiff's Performance Appraisal was "Fully Meets Expectations." For 2015, Plaintiff's Performance Appraisal was "Exceeds Expectations."

10. In early 2016, Plaintiff had surgery. Upon Plaintiff's return to work following her surgery, HOD Kevin Kinsey made a sexually inappropriate statement telling Plaintiff, "I'm sure your husband will still think you look sexy even if you can't wear a bikini anymore because of your scar." HOD Kevin Kinsey smiled when he made this remark to Plaintiff, but Plaintiff rebuked him sternly stating that she did not appreciate it.

11. On August 22, 2016, KMMG implemented a new career banding process. If Plaintiff's prior required experience had been credited in the previous career banding review in 2014, she would have been in career band level 3, instead of career band level 2. After review under the new process in 2016, Plaintiff was still in career band level 2. When Plaintiff asked HOD Kevin Kinsey why she was not in career band level 3, he told Plaintiff that her prior experience was not valid. Plaintiff then asked HOD Kevin Kinsey why she was hired when the job description required two to five years of relevant experience if her prior experience was not valid for career banding purposes. HOD Kevin Kinsey had no response. When Plaintiff inquired at HR why the career banding decision is made by the HOD when the process is an HR process, HR had no response.

12. For 2016, Plaintiff's Performance Appraisal was "Exceeds Expectations."

13. On January 27, 2017, after Plaintiff received her 2016 Performance Appraisal, Ken Riley, Plaintiff's direct manager, told her that HOD Kevin Kinsey sent emails to all department managers instructing them to alter Performance Appraisal scores so as to make the department average a specific number. Some male employees' scores were adjusted to make certain favored male employees top-ranking in the department.

14. During the second quarter of 2017, HOD Kevin Kinsey asked Plaintiff on multiple occasions how he would feel and what he should expect after his upcoming prostate surgery. Plaintiff told HOD Kevin Kinsey that she had no knowledge of the effects of prostate surgery and that his question was offensive.

15. On August 14, 2017, during Plaintiff's mid-year Performance Appraisal, Plaintiff asked what was expected or required of her to move up to an assistant manager position and when that might occur. Plaintiff did not receive an answer even though she was qualified for the assistant manager position at that time.

16. For 2017, Plaintiff's Performance Appraisal was "Exceeds Expectations."

17. In or around April, 2018, Plaintiff was leveled up to career band level 3 and received an annual raise of approximately $5,000.

18. In or around July/August, 2018, Jacob Marrero, a Caucasian, male co-worker of Plaintiff, was promoted to assistant manager. Plaintiff's direct manager, Ken Riley, told Plaintiff that HOD Kevin Kinsey did not think Plaintiff was ready to be an assistant manager but other managers in the department supported Plaintiff's promotion to assistant manager.

Plaintiff learned that her Performance Appraisal score was "re-calculated" by HOD Kevin Kinsey so that Jacob Marrero's score was higher than Plaintiff's score. At this time, Plaintiff served on two extra teams, including the Core Values Team and ISO Internal Auditor Team, in addition to her regular job duties. In addition, Plaintiff became ISO certified, Six Sigma yellow belt certified, and trained a new team member, which is an assistant manager's responsibility. Jacob Marrero did not serve on any extra teams.

19.     In the third quarter of 2018, HOD Kevin Kinsey told Plaintiff that he liked her purple polo shirt and that the color looked good on her. Plaintiff told HOD Kevin Kinsey that his remark was offensive.

20.     On September 28, 2018, JAC products, a supplier, came for a visit to KMMG. The JAC products supplier asked HOD Kevin Kinsey, in Plaintiff's presence, when Jacob Marrero had been promoted to assistant manager. HOD Kevin Kinsey looked at Plaintiff and winked and said, "It was several months ago. It was a long time coming and well-deserved."

21.     On October 23, 2018, HOD Kevin Kinsey told Plaintiff's direct manager, Ken Riley, to tell Plaintiff not to wear blue jeans to work. Plaintiff was wearing navy dress slacks at the time. Plaintiff had never worn blue jeans to work.

22.     On October 30, 2018, HOD Kevin Kinsey called Plaintiff out publicly for not having her desk locked during a security audit when, in fact, Plaintiff's desk was locked. Two other employees, Ken and Aaron, told Plaintiff that they knew her desk was locked.

23.     For 2018, Plaintiff's Performance Appraisal was "Exceeds Expectations."

24.     For 2019, Plaintiff's Performance Appraisal was "Exceeds Expectations." Plaintiff's direct manager, Ken Riley, commented in Plaintiff's 2019 Performance Appraisal that,

> ... Hope does it all and does it all well. Being down our A/M [assistant manager] for a chunk of 2019, Hope's voice was even heightened as she effectively took on that role as her team member peers turned to her in many instances for advice. Her works and effort in 2019 were phenomenal and her passion for excellence is bar none.

25.     In 2019, Plaintiff took all required and offered training classes, received Six Sigma green belt certification, and developed several SAP programs for the department. Even though Plaintiff was acting assistant manager for most of 2019 and performing the duties of assistant manager, HOD Kevin Kinsey did not believe Plaintiff was ready to be promoted to career band level 4.  When Plaintiff asked Ken Riley what else she could do to be promoted, she received no response.

26.     On March 30, 2020, KMMG implemented another update to the Career Banding Review process.  During this update, team members in the Procurement Department were not given a department average.  Without knowledge of the department average, team members did not know how their Performance Appraisal scores ranked in comparison with the Performance Appraisal scores of other team members in their department. HOD Kevin Kinsey told Plaintiff that Human Resources ("HR") directed that the Procurement Department not be given a department average.  During the update, Plaintiff was not promoted to career band level 4.

27. When Plaintiff asked HOD Kevin Kinsey why she did not move to career band level 4, he told her that HR only allowed two specialists to level up. The two specialists who leveled up, Jazmon Griggs and Russell Brumfield, were both males. HOD Kevin Kinsey did not tell Plaintiff why she was not considered even though she met all of the criteria for promotion. Plaintiff had much more experience in supply chain management than either of the two males who were promoted.

28. Following this conversation with HOD Kevin Kinsey, Plaintiff met numerous times with KMMG HR and Team Relations ("TR") between April and September, 2020, to find out why she was not promoted to career band level 4. In several of these meetings, Plaintiff complained to HR and TR about HOD Kevin Kinsey's sexually harassing remarks and comments which reflected his bias against female employees. In these meetings, Plaintiff also complained that HOD Kevin Kinsey's bias against female employees was the reason her promotions had been delayed, her male co-worker had been promoted over her, and she had been falsely accused of dress code and security protocol violations in 2018. Plaintiff explained that HOD Kevin Kinsey's bias against female employees was preventing her growth in her career. After these meetings, no one from HR or TR ever told Plaintiff that HOD Kevin Kinsey had been counseled on sexual harassment and his behavior never changed.

29. Finally, at the end of September, 2020, after months of meetings with HR and TR, Plaintiff was promoted to career band level 4, but with only a $3,000 annual salary

increase. Plaintiff's promotion should have resulted in a much larger increase based on her qualifications, performance appraisals, and the salary range for career band level 4.

30. On October 5, 2020, Plaintiff was scheduled to travel to Mexico to work with a KMMG supplier who was having major quality and capacity issues. Plaintiff was in charge of the Mexican supplier and was responsible for that supplier.

31. About 3:00 p.m. on October 4, 2020, the day before Plaintiff was scheduled to leave for Mexico, Ken Riley called Plaintiff and told her that KMMG was sending Aaron Choi to Mexico, instead of Plaintiff. When Plaintiff asked Ken Riley why KMMG was sending Aaron Choi to Mexico instead of Plaintiff, since Plaintiff had been working exclusively with this supplier for the past six months, Ken Riley said the reason was that Aaron Choi was a Korean male.

32. On January 8, 2021, Jeongmin "Ryan" Yoon, Plaintiff's Korean coordinator in the Body/Exterior Group asked Plaintiff if Supplier Quality would sign a Parts Deviation Request ("PDR"), which is used when a part is out of specification but the deviation is allowed only for a limited period of time. Plaintiff told Yoon that Supplier Quality would not sign a PDR because she had already discussed this issue with the assistant manager of the Supplier Quality Department. Mr. Yoon then winked and asked Plaintiff to ask her fiancé, Alex, who worked in the Supplier Quality Department, to sign the PDR. Plaintiff refused this request because it was outside of standard procedure and would have violated KMMG's

business code by requiring Plaintiff to trade on her personal relationship with her fiancé in order to get the PDR signed.

33. On January 27, 2021, Plaintiff submitted her resignation letter giving KMMG two weeks notice of her intent to leave KMMG. HOD Kevin Kinsey told Plaintiff that he was going to meet with HR in an effort to get an offer of continued employment to entice Plaintiff not to leave KMMG. HOD Kevin Kinsey said he would not turn in Plaintiff's resignation until she had rejected the offer.

34. On January 28, 2021, KMMG HR Senior Manager Latesa K. Bailey gave Plaintiff a letter offering terms of her continued employment at KMMG. Plaintiff's annual base salary would be raised to $68,000, effective February 1, 2021, an increase of approximately $9,000. The letter also offered a one-time retention bonus of $5,000, with one-half of this sum to be paid immediately and the other half paid only if Plaintiff is still employed on the second anniversary of her acceptance of the offer. The offer was open until the close of business on February 1, 2021. Plaintiff did not accept the KMMG offer of continued employment.

35. When Latesa K. Bailey gave Plaintiff the offer of continued employment, she told Plaintiff that KMMG compared her salary to that of other employees of her level and that the new salary offered was the average paid by KMMG to other employees of her level.

36. Plaintiff received her Performance Appraisal for 2020 on February 5, 2021. Plaintiff refused to sign her Performance Appraisal for 2020 because she did not agree that

her performance should have been rated as "Meets Expectations." Plaintiff took every available training class and was turned down when she requested additional extra training. Plaintiff's manager, Ken Riley, told Plaintiff that HOD Kevin Kinsey manipulated Plaintiff's Performance Appraisal so as to make the department average a predetermined number so that fewer employees in the department would be eligible for promotion.

37. On February 7, 2021, two days before her final day at KMMG, HOD Kevin Kinsey told Plaintiff to be honest in her exit interview and said, "Hopefully, you will be the catalyst for needed changes in our department." Plaintiff had her exit interview on February 8, 2021. Plaintiff's final day as an employee of KMMG was February 9, 2021.

38. In her exit interview, Plaintiff reiterated her previous complaints about Procurement Department HOD Kevin Kinsey's inappropriate sexual harassment and advances, and his bias against female employees which had delayed her promotions unfairly, resulted in the manipulation of her score on her performance appraisals to justify promotion of her less qualified, male co-workers, and resulted in her replacement by a Korean male on the trip to work with her Mexican supplier in 2020. Plaintiff further complained again about her unfair performance appraisals that could not be explained in light of her extra efforts to be trained beyond requirements and her participation in extra teams. Plaintiff explained that HOD Kevin Kinsey's sexual harassment of her and bias against her because she is female had prevented her from growing in her career and using her expertise. Plaintiff stated that

HOD Kevin Kinsey had held her back because she is female. Plaintiff explained that these were the reasons she was forced to resign from KMMG.

## COUNT ONE

### Hostile Work Environment Sexual Harassment

39. Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-38 of this Complaint as though fully set out herein.

40. Plaintiff belongs to a protected group. She is female.

41. Plaintiff was subjected to unwelcome sexual harassment at the hands of KMMG Procurement Department HOD Kevin Kinsey through offensive remarks about her body, her clothing, and his future sex life after prostate surgery. The sexual harassment Plaintiff suffered was based on her female sex.

42. KMMG Procurement Department HOD Kevin Kinsey's sexual harassment of Plaintiff and bias against Plaintiff because she is female was manifested by his initial decision not to credit Plaintiff's prior relevant experience when KMMG adopted the career banding review process in December, 2014, resulting in Plaintiff's placement in career band level 2, instead of career band level 3, where she would have been placed had such experience been properly credited to her. Plaintiff would have received a higher base salary and would have been eligible for a higher maximum base salary in career band level 3 than she received in career band level 2.

43. KMMG Procurement Department HOD Kevin Kinsey's sexual harassment of Plaintiff and bias against Plaintiff because she is female was further manifested by his decision to lower Plaintiff's score on her performance appraisal to justify the promotion of Jacob Marrero, a less qualified, Caucasian male co-worker of Plaintiff, to assistant manager of the department, whose score on his performance appraisal was lower than Plaintiff's initial score.

44. KMMG Procurement Department HOD Kevin Kinsey's sexual harassment of Plaintiff and bias against Plaintiff because she is female was further manifested by his false accusations against Plaintiff for dress code and security protocol violations in 2018.

45. KMMG Procurement Department HOD Kevin Kinsey's sexual harassment of Plaintiff and bias against Plaintiff because she is female was further manifested by his decision not to promote Plaintiff to career band level 3 until approximately April, 2018, even though she was qualified for promotion much earlier based on her performance evaluations and her prior experience.

46. KMMG Procurement Department HOD Kevin Kinsey's sexual harassment of Plaintiff and bias against Plaintiff because she is female was further manifested by his refusal to promote Plaintiff to career band level 4 when KMMG updated the Career Band Level Review process in March, 2020.

47. Following Plaintiff's complaints to HR and TR between April and September, 2020, KMMG failed to take appropriate corrective and remedial measures to prevent HOD Kevin Kinsey's continuing sexual harassment and bias against Plaintiff.

48. Further, as a direct result of Plaintiff's rebuke of HOD Kevin Kinsey for his sexually inappropriate comments and advances, Plaintiff suffered adverse employment actions in that Plaintiff did not receive promotions and salary increases when she should have received them and the amounts of her salary increases were lower than her continuously improving performance appraisals and her zealous participation in extra training and extra teams indicated she should have received.

49. Taken together, the sexual harassment Plaintiff suffered at the hands of HOD Kevin Kinsey because of his bias against Plaintiff because she is female was sufficiently severe and pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment in that Plaintiff did not receive promotions and salary increases when she should have received them and the amounts of her salary increases were lower than her continuously improving performance appraisals and her zealous participation in extra training and extra teams indicated she should have received.

50. Finally, Plaintiff was constructively discharged and forced to resign her employment with KMMG because of the sexual harassment she suffered which KMMG failed to take appropriate steps to remedy or eliminate from the workplace even after Plaintiff complained to HR about HOD Kevin Kinsey's sexually harassing conduct and sexual bias

against her because she is female. To Plaintiff's knowledge, HOD Kevin Kinsey was never counseled by KMMG about his sexually harassing conduct because he never changed his sexually harassing conduct. For these reasons, HOD Kevin Kinsey's discriminatory conduct unreasonably interfered with Plaintiff's ability to perform her work; she could no longer work for KMMG under the conditions described.

51.     Because KMMG was in exclusive control of the working environment at KMMG and it did nothing to remedy or eliminate the discriminatorily abusive work environment of severe and pervasive sexual harassment, KMMG is liable.

## COUNT TWO

### Title VII Retaliation

52.     Plaintiff re-alleges and incorporates the averments set out in Paragraphs 1-38 of this Complaint as though fully set out herein.

53.     In reporting the sexual harassment to HR and TR, Plaintiff was opposing a perceived illegal work practice. This action is a statutorily-protected activity under Title VII.

54.     As a direct result of her opposition to HOD Kevin Kinsey's continuing illegal work practices, Plaintiff suffered retaliatory, adverse employment actions in that Plaintiff did not receive promotions and salary increases when she should have received them and the amounts of her salary increases were lower than her continuously improving performance appraisals and her zealous participation in extra training and extra teams indicated she should have received.

55. Further, as a direct result of Plaintiff's rebuke of HOD Kevin Kinsey for his sexually inappropriate comments and advances, Plaintiff suffered retaliatory, adverse employment actions in that Plaintiff did not receive promotions and salary increases when she should have received them and the amounts of her salary increases were lower than her continuously improving performance appraisals and her zealous participation in extra training and extra teams indicated she should have received.

56. These adverse employment actions were causally related to Plaintiff's protected activity; all occurred within a brief period of Plaintiff's protected activity. All adverse employment actions were motivated by HOD Kevin Kinsey's retaliatory animus against Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, the above premises considered, Plaintiff prays that this Court will assume jurisdiction over this action and enter a judgment against Defendant granting the following relief:

(a) Finding that Defendant engaged in unlawful retaliation and/or discrimination against Plaintiff in violation of 42 U.S.C. § 2000e, *et seq.*;

(b) Awarding back-pay during all periods of employment from August 12, 2013, to the date of judgment in this case, including the value of all fringe benefits, as awardable by virtue of 42 U.S.C. § 2000e-5;

  (c) Front-pay beginning at the date of judgment and continuing until such time as Plaintiff can be expected to attain comparable or equivalent remunerative employment;

  (d) Compensatory damages for the loss of pension benefits, retirement benefits, future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;

  (e) Pre-judgment interest;

  (f) Punitive or exemplary damages;

  (g) Any other awardable damages which the Court deems appropriate;

  (h) Reasonable attorneys' fees and costs awardable under 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988.

## JURY DEMAND

Plaintiff demands trial by struck jury on all issues so triable.

Respectfully submitted this 13th day of September, 2021.

/s/ Barbara H. Agricola
Barbara H. Agricola

Counsel for Plaintiff

**OF COUNSEL:**

**AGRICOLA LAW, LLC**
127 South 8th Street
Opelika, Alabama 36804
Telephone: 334.759.7557
Facsimile: 334.759.7558
barbara@agricolalaw.com
www.agricolalaw.com